EMILY R. WILSON, EXECUTRIX, ET AL., APPELLANTS, VS. PHŒBE FRIDENBERG, APPELLEE.

1. When a decision has been delivered in a cause in this court the decision becomes *quoad hac* the *law of the case,* and cannot at a subsequent term be reviewed. The subsequent appeal brings up only the proceedings of the Circuit Court after the mandate of this court.

2. A testator has no power to dispose of his *homestead* by will, whether he is indebted or not indebted at the time of his death. If he is not indebted, his heirs at law are entitled to the homestead by the operation of the laws of descent. If he is indebted, they are en-titled to it, by the same law, freed from the debts of the testator by force of the constitutional provisions of homestead exemption.

3. When a testator makes a will making provision therein for his widow and the widow does not signify her dissent thereto in the Circuit or County Court of the county wherein she resides at any time within one year after the probate of such will, she forfeits all right to dower in the testator's estate.

4. The testator directed by his will that his business should be carried on by his executors after his death in the same manner that he had conducted it. A creditor of the executors seeks to charge a special portion of said property with the payment of a debt cre-

ated by the executors in carrying on the business : *Held,* That only that part of testator's property used by him in carrying on said business was *prima facie* liable to the debts created by the executors in conducting said business, and that in the absence of an allegation in the bill that the said property was so used and employed by the testator, we are bound to presume that it was not a part of the fund used in carrying on said business and not liable to the debts created by the executors.

5. An order of a Circuit Court on petition presented by an executor for authority to mortgage assets of the estate to secure debts incurred by the executor, is void as to all persons interested in said estate who are not parties thereto, and is inoperative to authorize the executor to mortgage property when not authorized by the will.

6. When one makes a *voluntary* payment of a debt or charge he cannot be subrogated to the rights of the original creditor.

7. Nor can a creditor of an executor be subrogated to the rights of such executor for reimbursement from the funds of the estate for expenditures incurred in the execution of his trust, when said executor has wasted the assets of the estate.

Appeal from the Circuit Court for Madison county, to which the case had been transferred from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*A. W. Cockrell* for Appellants.

*John E. Hartridge* and *M. C. Jordan* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court:

The facts in this case are fully set forth in Wilson vs. Fridenberg, 19 Fla., 461, and in Fridenberg vs. Wilson, 20 Fla., 359. The case now comes before this court on an amended bill, to which Edgar C. Parkhurst and Daisy E. Parkhurst, heirs at law of Converse Parkhurst, deceased, are added as parties to the bill, and seeks to foreclose the

mortgage set forth in 19 Fla., 461, on Lots Nos. 2 and 5 in Block No. 25, in the city of Jacksonville. The bill prays that in case it should be adjudged by this court that the said mortgage be not a valid lien upon said mortgaged property or any part thereof, that oratrix may be subrogated to the lien of the taxes paid by her upon the same, and that said property be sold to pay said lien.

The bill prays further that in case it be adjudged by this court that said mortgage be not a valid lien on said mortgaged property or any part thereof, and that said Emily R. Wilson has a dower interest in the same or any part thereof, then that the interest of said Emily R. Wilson be subjected to the payment of the mortgaged debt aforesaid.

The bill further prays that in case it should be adjudged that the said mortgage is a valid lien on said property and a sale thereof be adjudged to pay said mortgage debt, and the amount realized from said sale be not sufficient to satisfy the decree that may be rendered in favor of your oratrix, that oratrix may have a personal judgment for the deficiency thereof against the said Emily R. Wilson, as executrix of Converse Parkhurst, and the said James Y. Wilson.

The defendants filed five pleas. The first one setting up that Lot 2 was the homestead of the testator, Converse Parkhurst, in his lifetime and was used by him as such until his death, and has been used and occupied by his family continuously since his death ; that said Edgar C. Parkhurst and Daisy E. Parkhurst were not parties or in any wise represented in the proceeding and decree of November 9th, 1878, which decree is set forth in the case alluded to in 19 Fla., 461. The second plea sets up the mandate of this court made when this case was here at the June term, 1882, directing the Circuit Court to enter an order allowing the pleas as to Lot No. 2. These pleas were overruled by the

Circuit Court. Complainant, in her amended bill, says that said Lot No. 2 was neither in law nor in fact the homestead of the said Converse Parkhurst because at the time of his death he owed no debts.

It is difficult to see how the decision of this court on this point in Wilson vs. Fridenberg, 19 Fla., can be misunderstood. Judge Westcott, in delivering the opinion of the court in the case, says: " As the matter has been argued however in the light of debts existing at the death of the homestead owner, and as we think in view of the conclusion we reach that it is not improper to state our conclusions in that aspect of the case, we do so. We think the rule controlling the disposition of the homestead property in that event is the same which controls in the event of no indebtedness, except perhaps as to the extent and degree of the estate which would pass to the heirs." We think this decision states the law on the subject correctly, but correct or incorrect it is the law of this case and cannot be reviewed by us. 17 Wall., 283 ; 94 U. S., 499.

The amended bill makes the case no stronger by averring that because the testator owed no debts at the time of his death that the property was not legally the homestead of Converse Parkhurst. The effect of the decision of this court in this case at the June Term, 1882, was to wholly eliminate from this controversy Lot No. 2. In either view of the alternative contemplated therein, that is whether Parkhurst, the testator, did or did not owe any debts at the time of his death, so far as the heirs at law, Edgar C. Parkhurst and Daisy E. Parkhurst, are concerned, it was the homestead of the testator. It was beyond his power to dispose of it by will. If he owed no debts his heirs at law were entitled to it by the laws of descent. If he owed debts they were entitled to it, by the laws of descent, freed from the debts by force of the constitutional provision of

homestead exemption. Brokaw vs. McDougall, 20 Fla., 212; Wilson vs. Fridenberg, 19 Fla., 461; Constitution, Art. 9, secs. 1 and 3. We think it equally plain that Mrs. Wilson lost her right of dower in Lot No. 2 by not dissenting from the will within the time allowed by law. The third plea of defendants as to Lot 5 sets up that said lot was purchased by the executors of Parkhurst some time after his death for use as an adjunct to the homestead, Lot No. 2, on which the family resided, with money on hand, or the proceeds of notes due him at the time of his death. This plea was also overruled by the Circuit Court.

The will of Parkhurst provides as follows:

"Second. I direct, and it is my will, that my business at Jacksonville and Palatka, Florida, be carried on by my executrix and executor in the same manner as I have conducted it, so long as in their judgment it shall be deemed best for my estate, to be closed and settled by them whenever they think best to do so." The only way that this property could be made subject to the payment of debts created by the executors after the death of Parkhurst was by showing that the property itself or the money employed n purchasing it, was a part of the fund used by the testator in the business which he was conducting at the time of his death, and which by his will he directed should be carried on after his death by his executors. This point was settled by the decision of this court at June term, 1883, in Fridenburg vs. Wilson, 20 Fla., 359. The court said: "When a testator directs his business to be carried on after his death *prima facie*, the only fund liable to subsequent creditors of his executors carrying on the business is that which was employed in the business by the testator. To authorize such creditors to resort to any other fund for payment, the testator, by his will, must give the power in clear and unambiguous language."

Again: "No other portion of his estate is subject to debts incurred in the business by the executors except that which was employed in the business by the testator." The The bill nowhere sets up that Lot 5, or the money used in purchasing it, was a part of the fund used in carrying on the business of the testator, and we are bound to presume in the absence of allegations and proof to the contrary that it was not a part of such fund, and not liable to be made subject to the debts created by the executors. The result is that the mortgage is of no more binding force on Lot 5 than upon Lot 2. The order of the Circuit Court authorizing the executors to mortgage the property was void as to the infants Edgar C. and Daisy E. Parkhurst because they were not parties, and it "does not," in the language of Judge Westcott, "operate to enable her," the executrix, "to mortgage an estate of another person, which estate was not controlled by the will." The bill prays that the complainant may be subrogated to the liens of the taxes on the property paid by her, and that said property may be sold to satisfy the same. So far as the infants Edgar C. Parkhurst and Daisy E. Parkhurst are concerned the payment of taxes was wholly voluntary on the part of complainant, and she is not entitled to re-imbursement from them. The payment of taxes which were a charge on the estate by Emily R. Wilson, the executrix, if made by her was an outlay of money "properly incurred in the execution of the trust." Perry on Trustees, 910. If paid by complainant in pursuance of an agreement to do so with the executrix, or if paid by complainant to protect a supposed mortgage wherein the executrix had agreed to pay the taxes and assessments, and had failed to do so through the right of the executrix to re-imbursement, complainant would ordinarily "have an equitable right very like a lien to resort to the same fund for payment when their remedy

against the executor is unavailing." Fridenberg vs. Wilson, 20 Fla., 359. In this case no such equitable right exists in favor of complainant, for the reason that the executors have wasted the assets of the estate, and have no right to re-imbursement from the estate.

With these views of this case it becomes unnecessary for us to consider the other prayers in the bill predicated upon the contingency that we should hold the mortgage to be a valid lien, or the action of the Circuit Court on pleas 4 and 5.

A decree is here rendered dismissing the bill, but without prejudice to any suit either in law or in equity against the parties interested.