Palmer v. Palmer.—Statement of Case.

CATHERINE L. PALMER, *Plaintiff in Error*, v. PAUL PALMER, *Defendant in Error*.

HOMESTEAD—DEVISE OF BY WILL—WIDOW'S RIGHTS IN—WIDOW MAY TAKE DOWER IN, AND RETAIN PROVISIONS IN HER FAVOR IN WILL DISPOSING OF OTHER PROPERTY—WIDOW'S RIGHT TO RETAIN POSSESSION OF HOMESTEAD.

1. The effect of the constitution of 1885 in so far as the homestead is concerned, where the relation of husband and wife exists, and where there is a child or children, is to compel such homestead to inure to the widow as widow, and to the heirs, unless the consent of the wife can be obtained to its alienation in the lifetime of the husband, and where such alienation does not take place, compels *intestacy* so far as such homestead is concerned by prohibiting its alienation by will.

2. In a case where a will undertakes to dispose of the homestead, but is void as to such homestead under the prohibition of the constitution, the widow is not deprived of her right of dower in such homestead because of her failure to dissent from the will under the provisions of section 1830, Revised Statutes, nor is she deprived of such right of dower in the homestead by accepting the valid provisions of the will made in her favor, where the will is not so framed as to render it inequitable for her to claim her dower right in the homestead and at the same time insist upon the valid provisions of the will made in her favor.

3. Section 1834, Rev. Stats., entitles the widow to retain full possession of the dwelling house in which her husband most usually dwelt next before his death free from molestation or rent until she shall have her dower assigned, and the statute furnishes ample authority for the heirs at law to initiate proceedings for the allotment to her of such dower.

This case was decided by the court *En Banc*.

Writ of error to the Circuit Court for Duval county.

### Statement.

The defendant in error sued the plaintiff in error in ejectment in the Circuit Court of Duval county for recovery of several lots of land lying contiguously to each

other in the village of South Jacksonville, an un-incorporated community, in said county, containing in the aggregate one acre of ground. The trial was had upon the plea of the general issue, and resulted, after an affirmative charge by the court in favor of the plaintiff, in a verdict and judgment for the plaintiff for the recovery of the entire property and for $340 for *mesne* profits. From which judgment the defendant below, Catherine L. Palmer, sued out writ of error from this court.

At the trial the following undisputed state of facts was developed: That the plaintiff, Paul Palmer, was the son, and the defendant, Catherine, was the widow, of Joseph Palmer, who owned the property for some time prior to his death in May, 1895, and who resided upon it, making it his home for some years prior to and at the time of his death with his wife the said Catherine; that the property consisted of about one acre of land and was not located in an incorporated town, the improvements thereon being the dwelling house of the said Joseph Palmer and an enclosing fence. Joseph Palmer shortly prior to his death executed a last will in which he devised to his wife, the said Catherine, various other parcels of real estate and certain personal property, and in which he bequeathed to his son, the said Paul, certain choses in action, and by a general clause in the will he devised and bequeathed all the balance of his property, real, personal or mixed, wheresover situated, which he then owned or that he might thereafter acquire and of which he should die seized and possessed, to the said Catherine, his wife, and to the said Paul, his son, share and share alike in fee.

This will appointed the widow and son as its executors. It was duly probated, and the widow, Catherine, interposed no dissent thereto within a year after its probate, thereby accepting the valid provisions thereof in her favor. The widow, Catherine, continued to occupy the homestead premises in dispute after her husband's death until the recovery against her in ejectment herein.

*J. W. Archibald* and *D. H. Doig* for plaintiff in error.

*D. U. Fletcher* for defendant in error.

TAYLOR, C. J. (*after stating the facts*).    On rehearing.—Various errors are assigned relative to the admission and rejection of evidence, but we deem them unimportant, and will proceed at once to a discussion of the merits of the real question at issue between the parties, basing the discussion upon the propriety of the affirmative charge given by the court to the jury, instructing them under the facts in the case, as stated above, to find the right of possession and property in the plaintiff.

To sustain this charge and the judgment consequent thereon it is earnestly contended here for the defendant in error that the whole question is irrevocably settled by the decision of this court in the case of *Wilson v. Fridenburg,* reported in 19 Fla. 461, 20 Fla. 359 and 21 Fla. 386.    That case in its several appearances before this court involved a construction of, and was planted upon a construction of, the homestead provisions of the constitution of 1868, and in the opinion, 19 Fla. 461, text 466, it is expressly said that "there is no provision in our constitution giving a widow any right of homestead.    Her right is as wife, and is confined to a power to prevent any alienation by the husband without the joint consent of his wife, and the exemption as homestead in the language of the constitution accrues to the heirs of the party having enjoyed or taken the benefit of such exemption.    As against such heirs, or as against any creditor of a deceased husband, she has no homestead right simply because the constitution does not in any way give it, unless she is an heir, and in this case she is not an heir under the statute, which in certain events makes her so. Her right here is confined to the general laws giving rights to widows, because such laws are not inconsistent with the exemption which accrues to the heirs.    *    *    *    But there is here a testamentary disposition of the whole estate of the

decedent, embracing the homestead in general terms.   It certainly will not be contended that the exemption of the homestead repeals the statute authorizing and regulating testamentary dispositions of property.   It might as well be contended that the statute giving dower, in the real estate of the husband freed from his debts, had the same effect. We have already stated that the widow's right here is that of dower, and that she has no constitutional homestead right."   In the same case, when again before the court in 21 Fla. 386, text 389, it was held that so far as the children, heirs at law of the deceased homesteader were concerned, "it was the homestead of the testator.   It was beyond his power to dispose of it by will.   If he owed no debts, his heirs at law were entitled to it by the laws of descent.   If he owed debts, they were entitled to it by the laws of descent, freed from the debts by force of the constitutional provision of homestead exemption."

By virtue of what provision in the homestead article of the constitution of 1868 was this conclusion arrived at, that it was beyond the power of the testator to dispose of his homestead by will in so far as the heirs at law were concerned?   It was by virtue of section 3 of that Article IX which provided that "the exemptions provided for in sections 1 and 2 of this Article shall accrue to the heirs of the party having enjoyed or taken the benefit of such exemption."

Within a few months after the *Wilson v. Fridenburg* case was last decided in this court in March, 1885, as reported in 21 Fla. 386, the constitutional convention of 1885 assembled, and in revising the homestead article of the former constitution of 1868 it made several material changes in the former instrument.   Instead of making the exemptions provided for accrue *alone to the heirs* of the party entitled to such exemption, as did the constitution of 1868, the constitution of 1885 in section 2 of Article X provides that "the exemptions provided for in section one shall inure to the widow and heirs of the party entitled to such exemp-

tion." It may be here remarked that were it not for a further provision to be hereafter quoted from the homestead article of the constitution of 1885, this inclusion of the widow with the heirs to whom the exemption should inure, would prohibit the holder of the homestead from alienating it by will so far as *she* was concerned, and for the same reason that such homesteader was prohibited from disposing of it by will so far as the *heirs* were concerned under the constitution of 1868. But the constitution of 1885, in section 4 of Article X, makes another radical departure from the former instrument of 1868, wherein it provides: "Nothing in this Article shall be construed to prevent the holder of a homestead from alienating his or her homestead so exempted by deed or mortgage duly executed by himself or herself, and by husband and wife, if such relation exists; nor if the holder be without children to prevent him or her from disposing of his or her homestead by will in a manner prescribed by law." It will thus be seen that the constitution of 1885 besides expressly including the widow, as widow, with the heirs to whom the exemption should inure on the death of the homestead ancestor, in express terms makes such homestead inalienable by the husband during the life of the wife without her consent, and, where there is a child or children, prohibits him from disposing of it by will. Where there is a child or children, any will attempting to dispose of the homestead is utterly void for any purpose whatsoever in so far as such homestead is concerned. The effect of the constitution of 1885 in so far as the homestead is concerned, where the relation of husband and wife exists, and where there is a child or children, is to compel such homestead to inure to the widow as widow, and to the heirs, unless the consent of the wife can be obtained to its alienation in the lifetime of the husband, and where such alienation does not take place, compels *intestacy* so far as such homestead is concerned by prohibiting its alienation by will. In the presence of a child or children, the homestead can not be dealt with or affected

by a will to any extent whatsoever, either directly or indirectly, and if it can not be diverted from inurement to the widow and heirs by the *direct.* provisions of a will, it can not be *indirectly* diverted from such inurement by the provisions of a will disposing legally of other property outside of the homestead. In other words, where the circumstances are such as to set the constitutional inhibition in motion against the alienation of the homestead by will, such inhibition is absolute, and no provisions of *any will* made by the homesteader can affect to any extent whatsoever the direction that the constitution contemplates such homestead shall go, that of inurement to the widow and heirs, whether such will undertakes to deal directly with the homestead, or exclusively with other property. No such will can affect the *homestead,* even to the extent of giving rise to that statutory condition of things as will drive the widow, so far as the homestead is concerned, to an election between her dower interest or child's part in such homestead, and the legal provisions made in her favor by such will in other property. We do not mean to be understood as holding that if the widow desires to take a child's part in the homestead instead of dower, she can do so without making her election to that effect as required by the statute. Nor do we now decide whether the doctrine of *equitable election* may not still have application to wills which devise other property to the widow in such a manner as to expressly require her to surrender all or some of her rights in the homestead, or in such a manner as to render it inequitable or inconsistent for her to accept the provisions of the will without surrendering such of her rights in the homestead as may be required to be surrendered by the will, for the will in the present case is not so drawn as to present that question. What we do decide is that in cases where the will is void as to the homestead under the prohibitions of the present constitution, the widow is not deprived of her right of dower in the homestead by her failure to dissent from the will under the provisions of sec. 1830, Revised Statutes,

nor is she deprived of such right of dower by accepting the valid provisions of the will made in her favor where the will is not so framed as to render it inequitable for her to claim her right in the homestead and at the same time insist upon the valid provisions of the will made in her favor.

It follows from what has been said that the court below erred in giving the affirmative charge in the plaintiff's favor, and in permitting the judgment entered for the defendant's ejectment from the premises and for *mesne* profits. Section 1834, Revised Statutes, entitles the widow to retain full possession of the dwelling house in which her husband most usually dwelt next before his death free from molestation or rent until she shall have her dower assigned her, and the statute furnishes ample remedy for the heir to initiate proceedings for the allotment to her of her dower.

For the reasons stated the judgment of the court below is reversed and the cause remanded for such proceedings as shall not be inconsistent with this opinion, the defendant in error to be taxed with the costs of this appellate proceeding.

CARTER, SHACKLEFORD, HOCKER, MAXWELL and COCK-RELL, JJ., concur.