O. F. WELLS, Appellant, v. L. HOWELL' DAVIS, *et al.,* Defendant, and THOMAS N. CARLTON, Intervenor.

198 So. 838
Division A
Opinion Filed June 21, 1940
On Rehearing En Banc, October 25, 1940
Rehearing Denied December 20, 1940

*Latimer C. Farr* and *Leitner & Leitner,* for Appellant;

*Wilbur W. Whitehurst,* for Appellee.

BUFORD, J.—On the 25th day of May, A. D. 1928, L. Howell Davis and Walter L. Sheppard as executors and trustees of the last will and testament of Lemual H. Davis, deceased, executed a mortgage to Eldridge R. Johnson pledging 1,160 acres of land in Section 8, Township 35 S., Range 24 E., and Section 1 in Township 35 S., Range 23 E., in Hardee County, Florida, to secure the payment of a note for the sum of $3,500.00 payable five years after date with 6 per cent interest per annum.

The mortgage contained the following covenant of the mortgagors:

"To pay all and singular the taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on said described property each and every, and if the same be not promptly paid the said mortgagee, his heirs, legal representatives or assigns, may at any time pay the same without waiving or affecting the option to foreclose or any right hereunder, and every payment so made shall bear interest from the date thereof at the rate of six per cent per annum." Thereafter, with the knowledge and consent of the mortgagee, on March 31, 1935, the mortgagors executed a lease on the lands described in the mortgage to one T. L. Carlton. That lease contained, *inter alia,* the following provisions:

"4th. It is hereby understood and agreed that the premises described in this lease have been sold for taxes due to the County of Hardee and State of Florida, and that tax liens have accrued against said lands in such manner that the same is subject to foreclosure, or sale, or other disposition under the laws of the State of Florida, and this lease is made with the understanding that if at any time during the effective period of this lease the Lessee shall be threatened with the loss of the benefits of said lease through the foreclosure of tax liens, or other legal proceedings authorized

under the laws of the State of Florida by reason of said tax lien, the Lessors will at their option either protect the Lessee against such loss by discharging said tax lien before any loss of the rights of the Lessee shall occur, or upon their refusal to do so, the Lessee may protect Lessors' rights under this lease at his own expense by purchase of such tax certificates. Nothing herein, however, shall be construed as to require the Lessor to pay any taxes which have now accrued, or which may hereafter accrue against the said property.

"5th. The Lessee agrees that he will at the terminal date of this lease forthwith and immediately and without notice, surrender possession of the said premises to the Lessors, reserving, however, to the Lessee the right to remove any fence, or post, gates or other property used in connection with the inclosure of said premises which would be and remain personal property and the property of the Lessee should the Lessors fail to reimburse the Lessee for any moneys paid by Lessee for taxes which the Lessors may fail to pay, as provided hereunder."

On the 8th day of April, 1935, one Campbell and one Williams applied to the Clerk of the Circuit Court of Hardee County to purchase all the outstanding tax sale certificates affecting the lands in Section 8 described in the mortgage and in the lease and thereupon made application to the Clerk for tax deed. It thereupon became necessary that the tax lien should be discharged in order to prevent a sale under the tax certificates. Carlton then advised Davis and Sheppard that the tax sale liens had been purchased and that the tax deed was to be issued on the lands to said purchasers on May 17, 1935. It was then agreed between Carlton and the lessors that, "Trustees Davis Estate agree lessee shall have authority to redeem taxes at own cost with same lien on redemption as purchaser lease to be modified

accordingly." This agreement, however, was made without the knowledge or consent of the mortgagee. This condition was not within the terms of the original lease. The lessors were in position to contract with the lessee that he could redeem the lands from tax sale in their behalf and could have a lien on the lands for that payment but they had no authority to bind the mortgagee to make that lien superior to the mortgage lien.

When the lands were advertised for sale under the tax certificate and were redeemed by the lessee acting for the lessor-owners the statutory lien for taxes was wiped out and a contractual equitable lien was created by the agreement between the lessors and lessee to which agreement the mortgagee was not a party. In other words when the lessors and lessee modified the terms of the contract as originally agreed to by the mortgagee but did not consult the mortgagee about the modification of the contract the mortgagee was not bound by the modified terms of the contract. By the redemption of the lands from the lien of the tax sale certificates prior to the issuance of the deed by the lessee on behalf of the lessors and under an agreement with the lessors that the lessee should have such lien as he would have had by the purchase of the tax sale certificates and that the lease should be modified in that regard, the lessee acquired the right to have a lien for the amount paid with the legal rate of interest 8 per cent per annum on the lands involved as against the lessor, but not as against the mortgagee. This transaction amounted to no more than if the owners, lessors, had borrowed the money from the lessee with which to redeem the lands from the tax sale certificates and had agreed to secure the loan by lien on the lands as of that date.

As long as the tax lien existed it was superior to the mortgage lien but when the tax lien was vacated and abolished by redemption it no longer existed and from

thence forward the lessee, furnishing the money with which to redeem, only held a contract lien under the agreement with the owners and that contract lien was subordinate to the contract lien evidenced by the prior mortgage.

If this were not true a mortgagor under covenant of the mortgage with his mortgagee to pay taxes on the mortgage property could disregard his covenant, allow taxes to become delinquent, redeem the lands from sale under delinquent tax sale certificates through a third party and cast the burden of paying the taxes on the mortgagee.

For the reasons stated, the decree is reversed and the cause remanded with directions that a decree be entered not inconsistent with the views herein expressed.

So ordered.

TERRELL, C. J., and THOMAS, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## ON REHEARING

PER CURIAM.—A rehearing has been heretofore granted in this cause and oral argument allowed and had.

Mr. Chief Justice TERRELL, Mr. Justice BUFORD and Mr. Justice THOMAS are of the opinion that the previous disposition of this case heretofore made on June 21, 1940, should be adhered to while Mr. Presiding Justice WHITFIELD, Mr. Justice BROWN and Mr. Justice CHAPMAN are of the contrary opinion. When members of the Supreme Court, sitting six members in a body and after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the judgment of the Supreme Court should be adhered to

on rehearing and there is no prospect of an immediate change in the personnel of the Court, the previous judgment of the Supreme Court should not be disturbed; therefore, it is considered, ordered and adjudged under the authority of State ex rel.. Hampton v. McClung, 47 Fla. 224, 37 Sou. Rep. 51, that the decree of the Circuit Court in this cause be reversed and remanded with directions that a decree be entered not inconsistent with the view expressed in said opinion, which is adhered to.

TERRELL, C. J., WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.